UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BRANDON MAURICE HEMPHILL,

        Plaintiff,                     Case No. 1:24-cv-773

v.                                            Honorable Sally J. Berens

UNKNOWN TREFIL et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner[1] under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a

---

[1] The complaint names inmate Robert Wright as a co-plaintiff, but inmate Wright has not signed the complaint. The Court will address that issue below.

court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]however, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[2]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss any claims Plaintiff purports to bring on behalf of inmate Robert Wright without prejudice. Furthermore, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Sabec, Sorenson, Thompson, Phillips, Alverez, Cory, and Washington. The Court will also dismiss, for failure to state a claim, the following claims against Defendants Trefil, Garcia, Knapp, Schiebner, and Curtis: (1) Plaintiff's Section 1983 official capacity claims; (2) Plaintiff's First Amendment retaliation claim against Defendant Garcia; (3) Plaintiff's Eighth Amendment claims; and (4) Plaintiff's RLUIPA claims. The following personal capacity claims for damages remain in the case: (1) Plaintiff's First Amendment free exercise claims against Defendants Trefil, Garcia, Knapp, Schiebner, and Curtis; (2) Plaintiff's First Amendment retaliation claim against Defendant Trefil; and (3) Plaintiff's

---

[2] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Fourteenth Amendment equal protection claims against Defendants Trefil, Garcia, Knapp, Schiebner, and Curtis.

## Discussion

**I.  Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains, however, occurred at the Muskegon Correctional Facility (MCF) in Muskegon, Muskego County, Michigan. Plaintiff sues MDOC Director Heidi Washington in her official and personal capacities. Plaintiff also sues the following MCF employees in their official and personal capacities: Warden J. Schiebner, Chaplain C. Curtis, and Correctional Officers Unknown Trefil, Unknown Sabec, Jimmy Garcia, Unknown Thompson, Unknown Cory, Unknown Alverez, Unknown Phillips, Unknown Sorenson, and A. Knapp.

Plaintiff has been a practicing Muslim for 10 years. (Compl., ECF No. 1, PageID.5.) He avers that he has prayed "over 18,000 times as a Muslim of the Salafi Methodology." (*Id.*) Plaintiff arrived at MCF in March of 2022. (*Id.*) He alleges that once at MCF, he "was never denied the option to [pray] in congregation until conflict occurred with MCF staff after a period of about a year." (*Id.*, PageID.6.)

On May 18, 2023, Defendant Garcia told Plaintiff, "I'm telling you if you want to pray all day like six unit, you have to meet certain qualifications, so if you pray I'm [going to] write you a ticket." (*Id.*) Plaintiff avers that he was told that Defendant Garcia took this action per a memorandum written by Defendants Knapp and Trefil at the direction of Defendant Schiebner. (*Id.*)

The next day, Plaintiff wrote a letter to Defendant Curtis, asserting that the policy and memorandum noted above "infringed upon [P]laintiff's rights of free exercise and equal

4

protection[]." (*Id.*) On May 31, 2023, Plaintiff filed a grievance about the matter. (*Id.*, PageID.7.) He also complained that Defendant Garcia told him that he "was not allowed to pray 5 times per day in accordance [with Defendants] Trefil and Knapp['s] memorandum." (*Id.*)

Defendant Knapp reviewed Plaintiff's grievance on June 9, 2023. (*Id.*) He denied it, stating that Defendants Trefil and Garcia "were following memorandum directives from the Warden instructing staff not to allow prisoners using the day room as a chapel unless authorized by the chaplain." (*Id.*)

On June 11, 2023, Plaintiff submitted another grievance against Defendants Trefil and Garcia. (*Id.*) According to Plaintiff, Defendants Trefil and Garcia retaliated against him for filing his first grievance by threatening to place Plaintiff on Security Threat Group (STG) status for "exercise of religious prayer." (*Id.*) Plaintiff suggests that Defendants Sabec, Sorenson, Thompson, Phillips, Alverez, and Cory were involved in this "concerted" action. (*Id.*) Specifically, Defendant Trefil told Plaintiff, "You guys are not allowed to pray[;] we have continuously shut that shit down." (*Id.*) When Plaintiff asked what rule was being broken, Defendant Trefil asked Plaintiff if he wanted to go to the "hole." (*Id.*) Defendant Trefil then said, "I'm not going to send you to the hole[;] give me your ID[;] I'm [going to] refer to you be STG'd." (*Id.*) Plaintiff felt "humiliated" and tried to explain that "congregational Salat (prayer) is an obligation in the religion, [and] that the Salat methodology [makes it] mandatory outside of the Friday Jumu'ah Salat." (*Id.*, PageID.8.)

On June 27, 2023, at a Warden's Forum, inmates were told that "religious group prayers were prohibited." (*Id.*, PageID.8-9.) Staff were also instructed not to allow inmates to use the dayrooms as chapels unless authorized by the chaplain. (*Id.*)

On June 30, 2023, Plaintiff spoke to Defendant Curtis about the issue. (*Id.*) Plaintiff told Defendant Curtis that Christian groups were "allowed to exercise their religious tenets inside

5

housing unit dayrooms, without infringement upon their practices." (*Id.*) Defendant Curtis stated, "[Y]ou guys try to pray everywhere I have worked within the MDOC and we've shut you guys down, I acknowledge that there should be some level of fairness but unfortunately there isn't." (*Id.*)

On July 17, 2023, Defendant Schiebner responded to Plaintiff's Step II grievances, stating that, if Plaintiff wanted to engage in extra religious practices, he could do so inside his cell, not in the unit dayroom. (*Id.*)

Inmate Robert Wright arrived at MCF on April 21, 2022. (*Id.*, PageID.10.) From May 5, 2022, until October 22, 2022,[3] he "was allowed to perform congregational salat with a group of Muslims." (*Id.*) Wright was then moved to another unit. (*Id.*) On May 17, 2023, he was told by staff members that Muslims were no longer allowed to pray in the unit's dayroom. (*Id.*) On June 12, 2023, Wright and a group of Muslims attempted to pray in the dayroom and were stopped by non-party Officer Garza. (*Id.*) Garza then called all members of the group to the control desk and asked for their names and inmate numbers so that a list could be submitted to the STG coordinator. (*Id.*)

Based on the foregoing, Plaintiff asserts claims for violations of his First, Eighth, and Fourteenth Amendment rights, as well as violations of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc *et seq.* (*Id.*, PageID.13–15.) Plaintiff seeks declaratory and injunctive relief with respect to his RLUIPA claims, and compensatory and punitive damages for his constitutional claims. (*Id.*, PageID.16–18.)

---

[3] Although the complaint states that inmate Wright was allowed to "perform congregational salat" from May 5, 2023, through October 22, 2023, the Court believes 2023 to be a typographical error given the following allegations concerning what occurred in 2023.

## II. Inmate Wright as Putative Co-Plaintiff

Inmate Robert Wright is listed in the caption of the complaint as a putative co-plaintiff. (Compl., ECF No. 1, PageID.1.) Inmate Wright, however, has not signed the complaint. (*See id.*, PageID.19.) A filing submitted by a *pro se* party must bear the party's signature. *See* Fed. R. Civ. P. 11(a) (requiring all parties not represented by an attorney to personally sign every filing submitted to the court). Given the lack of inmate Wright's signature, the Court does not consider inmate Wright to be a plaintiff in this action.

Moreover, to the extent Plaintiff seeks to act on behalf of inmate Wright, he may not do so. Federal law specifies that cases in the courts of the United States may be conducted only by the parties personally or through counsel. 28 U.S.C. § 1654. That statute provides that, "[i]n all courts of the United States the parties may plead and conduct *their own cases* personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." *Id.* (emphasis added). The statute clearly makes no provision for a *pro se* party to represent others. The federal courts have long held that Section 1654 preserves a party's right to proceed *pro se*, but only with respect to his or her own claims. Only a licensed attorney may represent other persons. *See Rowland v. Calif. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–03 (1993); *United States v. 9.19 Acres of Land*, 416 F.2d 1244, 1245 (6th Cir. 1969). Plaintiff is not a licensed attorney, and as a layman, Plaintiff may only represent himself with respect to his individual claims and may not act on behalf of other prisoners. Accordingly, any claims brought on behalf of inmate Wright will be dismissed without prejudice.

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint

need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii).

    **A.**    **Section 1983 Claims**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Plaintiff raises four Section 1983 claims: (1) violation of Plaintiff's First Amendment right to the free exercise of religion; (2) violation of Plaintiff's First Amendment right to be free from retaliation; (3) violation of Plaintiff's Eighth Amendment right to be free

8

cruel and unusual punishment; and (4) Plaintiff's right to equal protection under the Fourteenth Amendment.

### 1. Official Capacity Claims

As an initial matter, Plaintiff brings constitutional claims against Defendants in both their individual and official capacities. Ordinarily, a suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity, in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

Here, Plaintiff explicitly states that he is seeking compensatory and punitive damages only for his constitutional claims. (Compl., ECF No. 1, PageID.17–18.) His requests for declaratory and injunctive relief are indicated to be solely with respect to his RLUIPA claims. (*Id.*, PageID.16–17.) Because Defendants are entitled to immunity as to Plaintiff's claims for monetary damages against Defendants in their official capacities, Plaintiff's official capacity Section 1983 claims will be dismissed in their entirety.

      **2.**      **First Amendment**

         **a.**      **Free Exercise**

Plaintiff contends that Defendants violated his First Amendment free exercise rights by banning the use of the housing unit dayrooms at MCF for congregational prayer.

The Free Exercise Clause of the First Amendment to the United States Constitution provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I. To establish that this right has been violated, [f]irst, a determination must be made: (1) whether the belief or practice asserted is religious in the person's own scheme of things, and (2) whether it is sincerely held[;] . . . [s]econdly, it must be determined whether the challenged practice of the prison officials infringes on the religious belief[; and] . . . [t]he next step in the proper analysis is to inquire whether the challenged practice of the prison officials furthers some legitimate penological objective." *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987).

Here, Plaintiff alleges that his First Amendment right to the free exercise of his religion was violated when staff at MCF issued a memorandum banning congregational prayer in the housing unit dayrooms. Plaintiff's complaint plausibly suggests that his belief in congregational prayer is both religious and sincerely held. Because Plaintiff names Defendants in their personal capacities, whether the behavior of each Defendant has infringed upon Plaintiff's beliefs will be discussed in turn.

              **(i)**      **Defendants Trefil, Garcia, Knapp, Curtis, and Schiebner**

In his complaint, Plaintiff alleges that Defendant Schiebner ordered Defendants Trefil and Knapp to issue a memorandum prohibiting congregational prayer in the unit dayrooms. (Compl., ECF No. 1, PageID.6.) Plaintiff contends further that Defendants Trefil and Garcia personally enforced that policy against Plaintiff. Plaintiff also suggests that he spoke to Defendant Curtis about the issue, but nothing changed. At this stage of the proceedings, taking Plaintiff's allegations

as true, the Court will not dismiss Plaintiff's First Amendment free exercise personal capacity claims against Defendants Trefil, Garcia, Knapp, Curtis, and Schiebner.

### (ii) Defendants Sabec, Sorenson, Thompson, Phillips, Alverez, and Cory

Plaintiff speculates that Defendants Sabec, Sorenson, Thompson, Phillips, Alverez, and Cory acted in "concert[]" with Defendants Trefil and Garcia. (*Id.*, PageID.7.) That is Plaintiff's sole factual allegation against those individuals.

A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). That is, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676. Where a person is named as a defendant without an allegation of specific conduct, the claim is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am*., 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Here, Plaintiff's conclusory allegation that Defendants Sabec, Sorenson, Thompson, Phillips, Alverez, and Cory acted in "concert[]" with Defendants Trefil and Garcia is simply too vague to plausibly suggest that any of these individuals personally violated Plaintiff's constitutional rights. Plaintiff sets forth no allegations suggesting how Defendants Sabec, Sorenson, Thompson, Phillips, Alverez, and Cory actively violated Plaintiff's constitutional rights. It is Plaintiff's obligation, at this stage of proceedings, to plead sufficient facts to permit the Court

11

to draw reasonable inferences that Defendants violated Plaintiff's right to free exercise. *See Iqbal*, 556 U.S. at 679. Plaintiff has not met that burden. Accordingly, Plaintiff's First Amendment free exercise claims against Defendants Sabec, Sorenson, Thompson, Phillips, Alverez, and Cory in their personal capacities will be dismissed.

### (iii) Defendant Washington

Plaintiff suggests that he submitted a Step III grievance appeal to Defendant Washington. It appears that Plaintiff has named Washington as a Defendant because of her position as Director of the MDOC.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter*, 532 F.3d at 575–76; *Greene*, 310 F.3d at 899. The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific

> incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts suggesting that Defendant Washington encouraged or condoned the conduct of any of the MCF Defendants, or knowingly acquiesced in that conduct. Moreover, to the extent Plaintiff avers that Defendant Washington failed to act upon his grievance, that is insufficient to impose Section 1983 liability. *See Summers*, 368 F.3d at 888; *Shehee*, 199 F.3d at 300. Plaintiff's conclusory allegations are insufficient to state a claim against Defendant Washington. Accordingly, Plaintiff's First Amendment free exercise claims against Defendant Washington in her personal capacity will also be dismissed.

### b.     Retaliation

Plaintiff next suggests that Defendants Garcia, Trefil, Sabac, Sorenson, Thompson, Alverez, Phillips, and Cory violated his First Amendment right to be free from retaliation. Specifically, Plaintiff alleges that after he filed his first grievance, Defendants Trefil and Garcia threatened to place Plaintiff on STG status if he tried to engage in congregational prayer. (Compl., ECF No. 1, PageID.7.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged

13

in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff engaged in protected conduct by submitting a written grievance, by orally voicing his concerns about the MCF policy regarding congregational prayer in the dayrooms, and by attempting to practice his religion. *See Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."). Moreover, at this stage of proceedings, the Court presumes that a threat to be placed on STG status constitutes adverse action. *Cf. Hill*, 630 F.3d at 474 (noting that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse").

Plaintiff contends that Defendant Trefil threatened to refer Plaintiff to be placed on STG status a few days after Plaintiff filed his first grievance regarding the MCF policy on congregational prayer. Taking Plaintiff's allegations as true, his First Amendment retaliation claim against Defendant Trefil may not be dismissed on initial review.

Plaintiff, however, alleges no facts from which the Court could infer retaliatory motive with respect to Defendants Garcia, Sabac, Sorenson, Thompson, Alverez, Phillips, and Cory. As discussed above, Plaintiff's sole allegation that Defendants Sabac, Sorenson, Thompson, Alverez, Phillips, and Cory acted in "concert[]" with Defendants Garcia and Trefil is insufficient to suggest

14

that any of these individuals engaged in active unconstitutional behavior. Moreover, Plaintiff merely alleges the ultimate fact of retaliation with respect to Defendant Garcia. He has not presented any facts whatsoever to suggest that Defendant Garcia was involved in the threat to place Plaintiff on STG status. "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)). Accordingly, Plaintiff fails to state First Amendment retaliation claims against Defendants Garcia, Sabac, Sorenson, Thompson, Alverez, Phillips, and Cory, and such claims will be dismissed. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### 3. Eighth Amendment Claims

Plaintiff next contends that Defendants' actions violated his rights under the Eighth Amendment. The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those that are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (internal quotation marks omitted). To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Thus, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Id.* at 348 (citation omitted). Here, Plaintiff's allegations regarding the prohibition on using the dayrooms for congregational prayer do not rise to the level of an Eighth Amendment violation. Accordingly, Plaintiff's Eighth Amendment claims will be dismissed.

### 4.      Fourteenth Amendment Equal Protection

The Fourteenth Amendment Equal Protection Clause provides that states may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The threshold element of an equal protection claim is disparate treatment." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Discriminatory intent or purpose is also required, but "an invidious purpose may be inferred" where a classification "impinge[s] upon the exercise of a fundamental right." *Koger v. Mohr*, 964 F.3d 532, 544–45 (6th Cir. 2020) (quoting *Maye v. Klee*, 915 F.3d 1076, 1085–86 (6th Cir. 2019)).

In his complaint and exhibits, Plaintiff alleges that despite the MCF prohibition against use of the dayrooms for congregational prayer, Defendants did not enforce the policy against Christian groups, thereby allowing them to use the dayrooms for group prayer and activities. Plaintiff suggests that Defendants discriminated against Muslims by enforcing the policy against them.

As discussed above, Plaintiff fails to allege facts plausibly suggesting that Defendants Sabec, Thompson, Cory, Alverez, Phillips, Sorenson, and Washington were personally involved in the implementation and enforcement of the policy at issue. Accordingly, Plaintiff's equal protection claims against them will be dismissed.

However, as discussed above, Plaintiff sufficiently alleges personal involvement on the part of Defendants Trefil, Garcia, Knapp, Schiebner, and Curtis in their personal capacities. Moreover, because Plaintiff alleges a facially discriminatory distinction in treatment between members of different faiths, this case is governed by *Maye v. Klee*, 915 F.3d 1076 (6th Cir. 2019), *Koger v. Mohr*, 964 F.3d 532 (6th Cir. 2020), and *Heyward v. Cooper*, 88 F.4th 648, 661–62 (6th Cir. 2023).

In *Maye*, *Koger*, and *Heyward*, the Sixth Circuit considered claims by Muslim inmates that MDOC officials treated them differently in denying them aspects of their religious practices and

diets afforded to other religious groups. In each case, the Sixth Circuit held that the court would infer an invidious purpose from a facially discriminatory distinction between religious groups that burdens the plaintiff's fundamental right to religious freedom, allowing the plaintiffs to proceed with their equal protection claims. *Heyward*, 88 F.4th at 661–62; *Koger*, 964 F.3d at 544–45; *Maye v. Klee*, 915 F.3d at 1086. As in *Maye*, *Koger*, and *Heyward*, Plaintiff has sufficiently alleged that Defendants Trefil, Garcia, Knapp, Schiebner, and Curtis in their individual capacities have deprived Plaintiff of his right to equal protection under the law. His claims against them, therefore, will not be dismissed on initial review.

### B.    RLUIPA Claims

Plaintiff also claims that Defendants violated RLUIPA by prohibiting him from engaging in congregational prayer in the dayrooms at MCF.

RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). RLUIPA does not define the phrase "substantial burden." The Sixth Circuit, however, has concluded that the phrase "has the same meaning under RLUIPA as provided by the Supreme Court in its 'free exercise' decisions." *Mitchell v. Schroeder*, No. 2:21-cv-109, 2022 WL 263212, *4–5 (W.D. Mich. Jan. 28, 2022) (citations omitted). Accordingly, a burden is substantial "where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* at *5 (citations omitted). Likewise, a burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise." *Id.* (citations omitted).

RLUIPA, however, does not create a cause of action against an individual in that individual's personal capacity. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir.

17

2009), *aff'd Sossamon v. Texas*, 563 U.S. 277 (2011);[4] *see also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) ("[RLUIPA] does not create a cause of action against state employees in their personal capacity."); *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) ("RLUIPA does not provide a cause of action against state officials in their individual capacities . . . .").[5] Accordingly, any intended RLUIPA claims against Defendants in their individual capacities will be dismissed.

As set forth above, Plaintiff seeks declaratory and injunctive relief with respect to his RLUIPA claims. However, the Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *see also Heyward v. Cooper*, 88 F.4th 648, 656–57 (6th Cir. 2023) (declaring that the prisoner's RLUIPA claim was moot because the prisoner had "transferred facilities and 'his requests were directed specifically at' [the prior facility's] officials 'and were not targeted at' [the state department of corrections] 'programs as a whole.'") (quoting *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (quoting *Kensu*)); *Colvin*, 605 F.3d at 289 (concluding that prisoner's requests for declaratory and

---

[4] The United States Supreme Court granted certiorari only on the question of "[w]hether an individual may sue a State or state official in his official capacity for damages for violation of" RLUIPA. *Sossamon v. Texas*, 560 U.S. 923 (2010). Thus, the Supreme Court left undisturbed and unreviewed the Fifth Circuit's holding that "RLUIPA does not create a cause of action against defendants in their individual capacities." *Sossamon*, 560 F.3d at 331.

[5] In *Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014), the Sixth Circuit analyzed whether Congress's spending power permitted a RLUIPA damages claim against an individual prison official in the official's personal capacity. The court rested its determination that such claims were not permitted on its conclusion that "appropriate relief" under RLUIPA was not a sufficiently clear statement to authorize such a damages claim. *Id*. at 567–69. The Sixth Circuit stopped short of adopting the reasoning that swayed the Fifth Circuit in *Sossamon* and subsequent federal circuit court panels. *Haight*, however, did not squarely present the issue whether a personal capacity suit for injunctive or declaratory relief might be available.

injunctive relief under RLUIPA were moot because they were directed at the policies and procedures at a prior facility and not at the MDOC program as whole); *Cardinal v. Metrish*, 564 F.3d 794, 798–99 (6th Cir. 2009) (concluding that prisoner's RLUIPA claims for declaratory and injunctive relief were rendered moot by his transfer to another facility).

Here, Plaintiff claims that the alleged constitutional and statutory wrongs occurred during his incarceration at MCF. Plaintiff, however, is no longer incarcerated at MCF. Plaintiff is now incarcerated at LCF, and he has not alleged any facts to suggest that the prohibition against congregational prayer in the dayrooms is an issue at LCF. Under these circumstances, Plaintiff has failed to allege sufficient facts to show a continuing violation of federal law, and thus, no basis exists for granting either injunctive or declaratory relief.

For all the reasons set forth above, Plaintiff's RLUIPA claims against Defendants will be dismissed.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Furthermore, the Court does not consider inmate Wright to be a plaintiff in this action, and any claims brought by Plaintiff on behalf of inmate Wright will be dismissed without prejudice. Moreover, having conducted the review required by the PLRA, the Court determines that Defendants Sabec, Sorenson, Thompson, Phillips, Alverez, Cory, and Washington will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court will also dismiss, for failure to state a claim, the following claims against Defendants Trefil, Garcia, Knapp, Schiebner, and Curtis: (1) Plaintiff's Section 1983 official capacity claims; (2) Plaintiff's First Amendment retaliation claim against Defendant Garcia; (3) Plaintiff's Eighth Amendment claims; and (4) Plaintiff's RLUIPA claims. The following personal capacity claims for damages remain in the case: (1) Plaintiff's First Amendment free exercise

claims against Defendants Trefil, Garcia, Knapp, Schiebner, and Curtis; (2) Plaintiff's First Amendment retaliation claim against Defendant Trefil; and (3) Plaintiff's Fourteenth Amendment equal protection claims against Defendants Trefil, Garcia, Knapp, Schiebner, and Curtis.

An order consistent with this opinion will be entered.

Dated:   August 14, 2024                        /s/ Sally J. Berens
                                                                              SALLY J. BERENS
                                                                              United States Magistrate Judge